## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JUSTIN WIGGINTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-00675-TWP-TAB |
| | ) | |
| SWEENY OFFICER[1], | ) | |
| THALMAN OFFICER, | ) | |
| SHAW SGT., | ) | |
| HACKMAN SGT., | ) | |
| SIZEMORE SGT., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT, ORDER RESOLVING PENDING MOTIONS, AND ENTRY OF FINAL JUDGMENT

This matter is before the Court on a Motion for Summary Judgment filed by Defendants Officer Swinney, Officer Thaman, Sgt. Shaw, Sgt. Hackman, and Sgt. Sizemore (collectively "Defendants") (Dkt. 47); and a Cross-Motion For Summary Judgment filed by *pro se* Plaintiff Justin Wigginton ("Mr. Wigginton") (Dkt. 55). Also pending is Mr. Wigginton's Motion for Trial Date (Dkt. 44) and Motion for Default Judgment as to Sgt. Shaw (Dkt. 57). Mr. Wigginton, a prisoner currently incarcerated at the New Castle Correctional Facility ("New Castle"), initiated this action alleging that Defendants violated his Eighth Amendment rights. (Dkt. 1-2). Upon screening of the Complaint, the Court allowed Mr. Wigginton to proceed on an Eighth Amendment deliberate indifference claim against the Defendants. (Dkt. 7 at 3). For the reasons explained below, Defendants' Motion for Summary Judgment, is **granted**, and Mr. Wigginton's Motion for Summary Judgment, is **denied**; and all ancillary motions, are **denied as moot**.

---

[1] Defendant is misidentified as Sweeney. The Court correctly identifies the Defendant as Swinney in this Order.

1

# I.    LEGAL STANDARD

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

When reviewing cross-motions for summary judgment, all reasonable inferences are drawn in favor of the party against whom the motion at issue was made. *Valentia v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018) (citing *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017)). The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material

fact. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers, Loc. Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

Although *pro se* filings are construed liberally, *pro se* litigants such as Mr. Wigginton are not exempt from procedural rules.  *See Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008) (noting that "*pro se* litigants are not excused from compliance with procedural rules"); *Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998) (stating that procedural rules "apply to uncounseled litigants and must be enforced").  This does not alter the standard for assessing a Rule 56 motion, but it does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn.  *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997).

## II.    FACTUAL BACKGROUND

Mr. Wigginton did not respond to the Motion for Summary Judgment although he was served with the Motion and a separate Notice of his right to respond.  (Dkt. 50). Instead, he filed a cross-motion for summary judgment but failed to designate any evidence to support his cross-motion. With cross-motions for summary judgment, the Court's review of the record requires that [the Court] "construe all inferences in favor of the party against whom the motion under consideration is made." *O' Regan v. Arb. Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001). The consequences of Mr. Wigginton's failure to file a response or designate evidence, is that he has conceded the Defendants statement of undisputed facts. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); *see also*, S.D. Ind. Local Rule 56-1(b) ("A party opposing a summary judgment motion must . . . file and serve a response brief and any evidence . . . that the party relies on to oppose the motion.  The response must . . . identif[y] the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment.").

3

### A. The Parties

Mr. Wigginton is an inmate incarcerated at New Castle. In January 2024, Sgt. Swinney and Officer Thalman were correctional officers at New Castle. (Dkt. 49-1 ¶ 3; Dkt. 49-2 ¶ 3) and Sgt. Hackman and Sgt. Sizemore were correctional sergeants at New Castle. (Dkt. 49-4 ¶ 3; 49-5 ¶ 3 ). None of the Defendants are medical staff nor medically trained. (Dkt. 49-1 ¶ 4; Dkt. 49-2 ¶ 4; Dkt. 49-4 ¶ 4; Dkt. 49-5 ¶ 4). Defendants were trained to contact medical when an inmate sought to be seen by medical staff, complained about a medical condition, or required medical accommodations. (Dkt. 49-1 ¶ 5; Dkt. 49-2 ¶ 5; Dkt. 49-4 ¶ 5; Dkt. 49-5 ¶ 5).

### B. Events on January 9, 2024

Mr. Wigginton's unsworn Complaint alleges that on January 9, 2024, he exited his pod to get a medical health care request, his legs gave away and he collapsed on the floor while walking in the hallway at New Castle. (Dkt. 1-2 at 2). Mr. Wigginton cried out in pain since his feet and legs were already hurting, due to a recent flare up of his autoimmune disease. *Id*. Officer Swinney arrived and refused to signal a medical emergency, instead she radioed for assistance from her supervisors. *Id*. The other Defendants arrived and told Mr. Wigginton to get back into his pod. *Id*. Sgt. Shaw went so far as to threaten to put Mr. Wigginton in segregation, "if he didn't get his ass up and back into Pod-2 where he belonged, even if you have to crawl", and exclaimed that "we're not taking you to medical." (Dkt. 1 at 3).

Defendants' affidavits present a different version of the events. Officer Thalman and Sgt. Hackman received a call for assistance from Officer Swinney stating that an inmate had refused to go back into the pod. (Dkt. 49-2 ¶ 7; Dkt. 49-4 ¶ 7). Officer Thalman went to the C-Housing Unit and observed Mr. Wigginton lying on his side and propped up on his elbow. (Dkt. 49-2 ¶ 8). When Sgt. Sizemore arrived on C-Unit, Sgt. Shaw, Officer Thalman, and Officer Swinney were already

present. (Dkt. 49-5 ¶¶ 7-8). When Sgt. Hackman and Sgt. Sizemore arrived on the unit, they were aware that other supervisors and staff contacted medical multiple times prior in the day and advised of Mr. Wigginton's issues.[2] (Dkt. 49-4 ¶ 9; Dkt. 49-5 ¶ 9). Defendants understood that the medical team was aware of the issues that Mr. Wigginton brought up, but medical could not do anything at that specific time. (Dkt. 49-4 ¶ 10; Dkt. 49-5 ¶ 10).

Officer Thalman asked Mr. Wigginton what was wrong, but he shouted, "I am not talking to you, I want to see medical." (Dkt. 49-2 ¶ 9). Officer Thalman informed Mr. Wigginton that he could only help if he told him what the issue was, but Mr. Wigginton shouted again "I will not talk to you." *Id.* ¶ 10. Officer Thalman offered to assist Mr. Wigginton up off the ground, and he also offered a walker and a wheelchair. *Id.* ¶ 14. Mr. Wigginton refused all assistance from custody staff. *Id.* ¶ 15; (Dkt. 49-1 ¶¶ 9, 11; Dkt. 49-4 ¶ 11).

Officer Thalman called for Sgt. Shaw to assist. (Dkt. 49-2 ¶ 11). When Sgt. Shaw arrived, Mr. Wigginton still demanded to be brought to medical, because medical had not responded to the medical request he sent in to them. *Id.* Officer Thalman was present when Sgt. Shaw explained to Mr. Wigginton that correctional staff have no control over the scheduling of medical appointments or treatment, and all correctional officers present advised him that he needed to keep putting in medical request forms until he had an appointment. *Id.* ¶ 12. Sgt. Shaw told Mr. Wigginton that his two options were: (1) return to his cell and continue to submit medical requests or (2) be taken to segregation which would include being seen by medical prior to going to segregation. *Id.* ¶ 13.

At all times, Mr. Wigginton was alert and oriented, able to advocate for himself, and refused assistance from custody staff; instead, he demanded medical attention from medical staff. (Dkt. 49-1 ¶ 12, Dkt. 49-2 ¶ 16, Dkt. 49-4 ¶ 12, Dkt. 49-5 ¶ 12). Defendants affirm that Mr. Wigginton

---

[2] The designated evidence is unclear as to who contacted medical. However, the undisputed evidence reveals that medical was contacted multiple times.

showed no signs of a medical emergency, nor did he say he needed immediate medical attention. (Dkt. 49-1 ¶ 13, Dkt. 49-2 ¶ 17, Dkt. 49-4 ¶ 13, Dkt. 49-5 ¶ 13). Custody staff must observe a true medical emergency—something akin to calling 911—to call for emergency medical assistance via a "Signal 3000". (Dkt. 49-2 ¶ 18, Dkt. 49-4 ¶ 14; Dkt. 49-5 ¶ 14).

### III.    <u>DISCUSSION</u>

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)). The Court must first consider whether Mr. Wigginton suffered from an objectively serious medical condition. Often this prong requires a terse analysis because the parties focus so heavily on the second element (whether the Defendants acted with deliberate indifference). But here, Defendants argue that Mr. Wigginton's condition was not objectively sufficiently serious. (Dkt. 48 at 9). With settled Seventh Circuit and Supreme Court precedent to rely on, the Court agrees.

A plaintiff can demonstrate an objectively serious medical condition at least two ways. A plaintiff can point to a condition that "a physician has diagnosed as needing treatment." *McDonald v. Hardy*, 821 F.3d 882, 888 (7th Cir. 2016). Or a plaintiff can show that he suffers from a condition

so objectively serious that "even a lay person would easily recognize the necessity for a doctor's attention." *Id.* "A condition can be 'obvious' to a layperson even where he or she is unable to diagnose or properly identify the cause of an observed ailment." *Orlowski v. Milwaukee Cnty.*, 872 F.3d 417, 423 (7th Cir. 2017).

A plaintiff "must show that he faced a *substantial risk* due to [his] objectively serious medical condition." *Palmer v. Franz*, 928 F.3d 560, 563 (7th Cir. 2019) (emphasis added). When considering whether a condition is objectively serious, courts consider whether there are: "(1) conditions that could result in further injury or unnecessary and wanton infliction of pain if not treated; (2) injuries that a reasonable doctor or patient would find important and worthy of comment or treatment; (3) conditions that significantly affect an individual's daily activities; or (4) conditions that produce[ ] chronic and substantial pain." *Greyer v. Allen*, 2023 WL 6847068, at *6 (N.D. Ill. 2023) (citing *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008)); *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).

"A prison's medical staff that refuses to dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue – the sorts of ailments for which many people who are not in prison do not seek medical attention – does not by its refusal violate the Constitution. The Constitution is not a charter of protection for hypochondriacs." *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996); *see also Gutierrez*, 111 F.3d at 1372 ("All of this is not to say, however, that every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim, for clearly that is not the case.").

Based on the record as a whole, viewing everything in the light most favorable to Mr. Wigginton, no reasonable jury could conclude that he suffered from an objectively serious medical condition when he fell down in the hallway on January 9, 2024.

To start, Mr. Wigginton alleges in his complaint that he has a documented autoimmune disease called vasculitis, which can be fatal if left untreated or denied proper medication. (Dkt. 1-2 at 2). On January 9, 2024, Mr. Wigginton walked out into the hallway with his walker to the officer's desk to get a medical health care request and collapsed to the floor because his legs gave out on him. *Id.* He cried out in pain, especially because his feet and legs were already hurting him due to a recent flare-up of his disease, which he also contends was documented. *Id.* Unfortunately for Mr. Wigginton, his complaint is not signed under penalty of perjury; thus, the Court cannot consider it as evidence. Nor is the complaint accompanied by any documentation, medical records, or any other medical reporting. *See id.*

Mr. Wigginton also filed a Motion for Summary Judgment in this matter, (Dkt. 55), but his motion neither provides any information nor designates evidence regarding his condition, nor provides any designated evidence that Defendants knew of his condition. *Id.*  In his cross- motion for summary judgment, Mr. Wigginton states that he "believes he has shown the Court evidence proving that the named listed Defendants were negligent and indifferent towards his pain and suffering, by denying him medical treatment or delaying him the treatment he is deserving of." *Id.* at 5. But he does not identify what that evidence is.

Mr. Wigginton was given Notice Regarding Right to Respond to and Submit Evidence in Opposition to Motion for Summary Judgment, which explained that the facts stated in Defendants' "Statement of Material Facts Not in Dispute" which "accompanies the motion for summary judgment will be accepted by the court as being true unless you submit your own affidavits or other admissible evidence disputing those facts". (Dkt. 50). Mr. Wigginton did not file a response, and unfortunately, Mr. Wigginton's Complaint and cross-Motion for Summary Judgment do not designate or cite to any evidence in support of his arguments. Although the Court need not scour

the record for him, *see Grant*, 870 F.3d at 573-74. However, the Court did scour and could find no sworn statements of designations to support Mr. Wigginton's claims. Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority." *M.G. Skinner & Associates Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017). "It is not the obligation of the court to research and construct the legal arguments open to parties . . ." *Riley v. City of Kokomo*, 909 F.3d 182, 190 (7th Cir. 2018) (internal quotation omitted).

Accordingly, Mr. Wigginton's request for summary judgment (Dkt. 55) must be **denied**, and Defendants' request for summary judgment (Dkt. 47) **granted,** on the basis that there is no evidence that Mr. Wigginton suffered from a serious medical condition.

But even assuming that Mr. Wigginton suffered from a serious medical condition, Defendants have also met their burden as to the second prong. To avoid summary judgment on the subjective prong of the deliberate indifference inquiry, the record must allow a reasonable jury to conclude that defendants acted with deliberate indifference—that is, that they "consciously disregarded a serious risk to [Mr. Wigginton's] health." *Dean v. Wexford Health Sources, Inc*., 18 F.4th 214, 241 (7th Cir. 2021) (cleaned up).

Deliberate indifference requires more than negligence or even objective recklessness. *Id*. Rather, Mr. Wigginton "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).

Defendants' designated evidence reveals that after Mr. Wigginton fell down, he was alert, oriented, and advocated for himself; and in doing so, he refused assistance from custody staff and demanded medical attention from medical staff. (Dkt. 49-1 ¶ 12, Dkt. 49-2 ¶ 16, Dkt. 49-4 ¶ 12, Dkt. 49-5 ¶ 12). The designated evidence also reveals that Mr. Wigginton was not in need of immediate medical attention, and the situation did not otherwise amount to a medical emergency.

(Dkt. 49-1 ¶ 13, ). 49-2 ¶ 17, Dkt. 49-4 ¶ 13, Dkt. 49-5 ¶ 13. Specifically, Officer Tharman tried to assist Mr. Wigginton up off the ground and offered him a walker and a wheelchair. (Dkt. 49-2 ¶ 14). All the while, Mr. Wigginton responded, "I am not talking to you, I want to see medical[,]" (Dkt. 49-2 ¶ 9), and "I will not talk to you." *Id.* ¶ 10. Defendants sought assistance from medical staff, but medical staff did not believe the situation to be a medical emergency. (Dkt. 49-4 ¶ 9; Dkt. 49-5 ¶ 9). Defendants understood that the medical team was aware of the issues that Mr. Wigginton brought up, but medical could not do anything at that specific time. (Dkt. 49-4 ¶ 10; Dkt. 49-5 ¶ 10).

The "division of labor within a prison necessitates that non-medical officials may reasonably defer to the judgment of medical professionals regarding inmate treatment." *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019). "If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands . . . absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Id.* (internal quotations omitted). Here, Defendants were aware that medical staff had been contacted, and it was medical staff who decided that the incident was not a medical emergency. (Dkt. 49-4 ¶ 10; Dkt. 49-5 ¶ 10). Defendants were entitled to rely on their judgment absent any evidence that Mr. Wigginton was suffering a true medical emergency. Defendants' personal observations of him were that he was not suffering from a medical emergency, and Mr. Wigginton has produced no evidence showing otherwise.

Likewise, the designated evidence revealed that Mr. Wigginton instead refused the assistance of custody staff, and the medical department did not assess the situation as a medical emergency. Defendants acted reasonably considering these circumstances and are entitled to summary judgment on the deliberate indifference claims against them.

## IV.    CONCLUSION

As a *pro se* litigant Mr. Wigginton faces significant challenges, and accordingly, the Court has afforded him appropriate latitude, however, *pro se* status does not absolve the requirements of compliance with the procedural rules. For the foregoing reasons, Defendants' Motion For Summary Judgment, Dkt. [47], is **GRANTED.**

Mr. Wigginton's Motion For Summary Judgment, Dkt. [55] is **DENIED**. Mr. Wigginton's Motion for Trial Date Dkt. [44] and Motion for Default Judgment as to Sgt. Shaw, Dkt. [57] are **DENIED AS MOOT**.

Final judgment will issue in a separate order.

**IT IS SO ORDERED.**

Date: 9/29/2025

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

JUSTIN WIGGINTON
293280
NEW CASTLE – CF
NEW CASTLE CORRECTIONAL FACILITY – Inmate Mail/Parcels
1000 Van Nuys Road
P.O. Box E
NEW CASTLE, IN 47362

All Electronically Registered Counsel